JUDGE 'ROBERTSON
concurring with the decision op the majority OP THE COURT IN THE POREGOING OPINION, BUT NOT CONCURRING WITH THE REASONING THEREIN, DELIVERED THE FOLLOWING SEPARATE OPINION:
After the opinion first delivered unanimously by this court, a rehearing was granted on an able and earnest petition of a party that had not been heard before that decision. The case has not been reargued except by that petition.
The majority of the court has taken back the first opinion, and substituted another, essentially different, on the construction of the will of J. I. Jacob. Both opinions allowed the widow of W. R. Jacob dower, and concur in one of two grounds adjudged by the first; and, consequently, I concur in the conclusion of the last opinion. But as the unanimous concurrence in so much of the last opinion, as gives to the widow all she claims, I thought it unnecessary and rather unsafe to overrule, by a bare majority, the construction of the will given in the first opinion. I considered it more prudent and befitting to leave that superfluous matter undecided as it stood when the rehearing was granted. But as the majority saw fit to take another course, and I cannot concur in its changed construction of the will, and, able *117 as the petition is, have not changed my opinion, but feel it rather strengthened by a more careful consideration of the case and scrutiny of the authorities cited, none of which, in my judgment, apply essentially to the provisions of Jacob’s will, I will submit my former opinion for the ground of my dissent; and, as I have no time to devote to the unnecessary purpose of elaboration, I will only add, that the opinion, as now rendered, will deprive all the daughters and most of the sons of the testator of more than a life estate, and this increases the force of my objections to it.
This is a friendly litigation between a widowed mother and her infant daughter, for the purpose of obtaining a judicial construction of a devise by John I. Jacob to his son, William Robinson Jacob, the husband of the widow, and father of the daughter, who is his only child.
The devisee, W. R. Jacob, having survived the testator and died intestate, his widow claims dower in the estate devised to him; and his infant daughter’s next friend, claims the whole of the estate unencumbered by dower.
The Chancellor adjudged the whole estate to the child; and this appeal by the widow requires a revision of that judgment.
The clauses of the will which bear directly on the question herein involved are as follows:
“ 2. I devise all my estate, real and personal, -to my executors, the survivor or survivors of them, for the purpose of executing this will.
“3. All my estate, real and personal, after the payment of my debts, shall be equally divided among my children by three commissioners, to be appointed by and under the supervision of the Louisville chancery court, except as herein directed.
*118 “11. The share of.my estate allotted to my son William Robinson Jacob shall be retained by my executors, paying to him during his life, quarter-yearly, the net proceeds of the rents and profits thereof, after deducting repairs, insurance, and taxes, with power to sell any unimproved property in his share for the purpose of vesting the proceeds in permanent improvements; but he shall have no power to sell or encumber any part of the estate so allotted, or the profits thereof, or anticipate its receipts; nor shall the same be, in any way, liable for his debts. After his death the property, with the unexpended avails, shall be conveyed and paid to his descendants, if there be any such then living, in the same manner it would pass by the law of descent if the same were to descend from him; if there be no such descendants, then the same shall be conveyed and paid to his heirs.”
Other provisions in the wall prescribed the same restrictions and qualifications on the property to be allotted to some of the testator’s other sons, and to all of his daughters ; and all the inter-alotments had been made before the death of William Robinson Jacob.
The spirit and context of the will manifest a cautious purpose to preserve the estate devised to most of the testator’s children for the benefit of themselves and families, and for secure transmission to their immediate descendants or heirs; and that provident aim was his only presumed motive for devising the legal title to his executors and securing the equitable title from improvident alienation or encumbrance by the testamentary beneficiaries to whom, by the third clause, he devised it, without limitation as to time, except in the usufruct for life.
The will imports an absolute devise to his children, subject only to the legal title in the trustees, and to the *119 express limitations on their use and on their power of disposition by sale, mortgage, Or devise. The use, and not the title, is expressly limited to the life only of the beneficial owner of the title. Had the testator intended that the title should cease with the life, no reason for such a purpose has been suggested or can be presumed; and why, in the legatory clause or elsewhere, did he not expressly say so ? And if he intended that descendants should take by purchase and not by law, why did he not say so explicitly; and why, in relation to the ulterior transmission of title, did he use the words “ descendants or heirs ? ” If he so intended, he has been strangely unlucky in .the use of langage which imports what he did not mean. The devise of the equitable title of his entire estate, to “ be equally divided” among all the testator’s children, certainly passed, the whole of that title to each of them as afterwards allotted. This is the plain construction of the third clause, which alone devises the estate ; and this must be its inevitable effect unless controlled by some other provision limiting the estate to life. We see no such express limitation; nor is there any other provision which implies any such limitation. The only limitation on the equitable fee simple is that contained in the eleventh clause, and that is only on any alienation or encumbrance of the title. The direction to the trustees to convey the legal title and pay any residual profits to the descendants or heirs, does not imply such limitation. The only presumable reason for that direction was, that the legal title had been devised to the trustees for a purpose fulfilled at the death of the testamentary recipient of the equitable right, and whoever succeeded to that equity was entitled to the legal title which the holders of it alone could convey; and, so too, as to the unexpended profits in the same custody. And why did the *120 testator simply direct conveyances and payments instead of devising the title directly to those to whom the conveyances were to be made ? The will does not, in our opinion, devise a life estate in the title and also a remainder. We presume that, if the testator had so intended, his language would have been unambiguous and essentially different from that which his eminent counsel employed.
Having secured the title from alienation by the devisees to the prejudice of “their descendants or heirs” to whom it would then go by law, there was no necessity for a specific devise for transmitting by will precisely the interest which would, undevised, pass to the same persons, and to exactly the same extent. There could be no consistent motive for such apparent absurdity, unless he intended, unreasonably and unjustly, to deprive widows of dower and surviving husbands of curtesy; and such a purpose could not be imputed to such a man and such a fathér as John I. Jacob, of Louisville; and such an intent is also negatived by his silence on that subject, and by his declaration that the transmission should be as by descent.
By harmonizing the will consistently with its context, and with reason and justice, the appellee’s title is that of the heir of her father, and not of a devisee of her grandfather; but if the appellee even holds as devisee and not as heir, the testator’s declaration that the title shall pass as if it descended from her father, subjects it to all the same legal consequences so far as the widow is concerned, and,-reserves all her rights as in estate descended from her husband. Therefore, even according to this interpretation of the will, the testator did not intend to cut her off; and, consequently, •as widows here are dowable of equitable estates which descend, the appellant is entitled to dower in this case.